IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SHANIQUA CLARK and LUCILLE GOODRIDGE, | § § § | |
| Plaintiffs, | § § § | |
| v. | § | CIVIL ACTION NO. H-16-1966 |
| FRANCISCO J. RUIZ, | § § § | |
| Defendant. | § § | |

## MEMORANDUM AND ORDER

This is a police shooting case. Francisco Ruiz shot and killed Charles Goodridge in the an apartment complex. Shaniqua Clark, Goodridge's surviving daughter, asserts a Fourth Amendment claim, seeking damages under 42 U.S.C. § 1983, and a state-law wrongful death claim. Ruiz moved for summary judgment that qualified and official immunity bar Clark's claims. (Docket Entry No. 22). Clark responded, Ruiz replied and moved to strike the deposition testimony of David Hall, Clark surreplied, and Ruiz responded to the surreply. (Docket Entries No. 25, 26, 30, 31). The court held a hearing at which counsel for both parties presented oral argument on the motions.

As a threshold matter, the deposition testimony of David Hall is admissible as competent summary judgment evidence because, even though Rule 32(a) may prohibit its use against Ruiz at a hearing or trial, it can be "presented in a form that would be admissible in evidence." FED. R. CIV. P. 56(c)(2); *see Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 978 (7th Cir. 2014) ("The weight of authority is that depositions can be the equivalent of affidavits, and are therefore admissible at the summary judgment stage."). Hall's deposition testimony is the equivalent of an affidavit and

is admissible at the summary judgment stage. The motion to strike the deposition testimony, (Docket Entry No. 26), is denied.

The record, including Hall's deposition testimony, shows factual disputes as to what happened. Because these disputes require credibility determinations, the court denies summary judgment. The genuine factual disputes are material to determining whether Ruiz is entitled to the qualified immunity he asserts. The motion for summary judgment, (Docket Entry No. 22), is denied. Because this denial of summary judgment on qualified immunity is based on disputed, material facts, the court of appeals "lacks jurisdiction to review the court's determination that a genuine fact issue exists." *Freeman v. Gore*, 483 F.3d 404, 410 (5th Cir. 2007).

The reasons for these rulings are explained below.

**I.      Background**

Ruiz's summary judgment evidence includes: (1) Ruiz's own affidavit; (2) an affidavit by Jose Morales, the manager of the apartment complex; and (3) a state-court notice of eviction and default judgment ordering eviction against Goodridge. (Docket Entry No. 22, Exs. A–C).

Clark's summary judgment evidence includes: (1) deposition statements of David Hall, a witness at the apartment complex; (2) several statements made by Ruiz; (3) statements by the responding officers and the paramedic; (4) a map of the apartment complex; (5) an investigative report about the incident; (6) walk-through video from the Harris County Sheriff's Office homicide file; and (7) emergency room records and an autopsy report. (Docket Entry No. 25, Exs. 1–13).

The evidence shows that Ruiz worked for the Harris County Precinct 4 Constable's Office as a deputy constable. He also worked as a courtesy officer for the Village in the Woods apartment complex, where he lived. As a courtesy officer, he patrolled the apartment complex, responding to

disturbances, criminal trespasses, "and any other potentially criminal or suspicious situations." (Docket Entry No. 22, Ex. A at ¶ 4). Ruiz's duties as a courtesy officer were under his authority as a law-enforcement officer.

On July 9, 2014, around 2:00 a.m., Ruiz left his apartment to patrol the apartment complex for suspicious behavior. Dressed in plainclothes, Ruiz saw Goodridge, a former resident of the complex, in the pool and gym area. Ruiz recognized Goodridge from a previous encounter during which Jose Morales, the apartment complex property manager, gave Goodridge a verbal trespass warning. Ruiz had informed Goodridge that he was not allowed on the property and had escorted him out of the apartment complex.

After seeing and recognizing Goodridge in the pool and gym area, Ruiz returned to his own nearby apartment to get his badge, handcuffs, and gun. He intended to arrest Goodridge for criminal trespass. Ruiz approached Goodridge, who was in the gym. He identified himself as an officer, stating "I know you remember me." (*Id.* at ¶ 9). Ruiz told Goodridge to put his hands on the wall and attempted to handcuff Goodridge. Goodridge initially complied with Ruiz's order to put his hands on the wall, but Ruiz was unable to handcuff one of Goodridge's hands. According to Ruiz, Goodridge then pushed him away and "stated that he wasn't going to jail." (*Id.*). Ruiz "became concerned that the incident would escalate into something more physical." (*Id.*).

Ruiz stepped away to allow Goodridge to gather his personal belongings and leave the gym. Ruiz followed Goodridge into the parking lot, still intending to arrest him for criminal trespass. While following Goodridge, Ruiz called dispatch and asked for assistance because Goodridge was taller and heavier. Ruiz asserts that: Goodridge became verbally aggressive, demanded that Ruiz stop following him, and was reaching and digging into his bag; that he did not know whether

3

Goodridge was armed; and that Goodridge suddenly and unexpectedly turned around, quickly moved toward him, and hit him in the left eye, and that the two struggled. Ruiz continues:

> I was stunned and believe [Goodridge] knocked me to the ground, almost as if he had tackled me. I also believe I was knocked unconscious, and I was on the ground. I didn't know what was going on for a moment. I was in the parking lot when I got knocked down. I felt my face kind of numbing up, and I felt a lot of pain in my elbow and my hip. I struggled with Mr. Goodridge as he continued his attack and as I tried to get away from him.
>
> We were wrestling, and I was trying to get him off of me. At one point, I could feel him on my belt reaching. I knew I had positioned my gun in my waistband. At that time, I believe he was trying to control my gun. I was exhausted and scared, and I believe Mr. Goodridge was getting the best of me in the fight, and was going to overpower me. I was feeling pain from where I fell. I tried to push him off of me but was not able to do so. I estimated that Mr. Goodridge was approximately 6'2" or 6'3" and weighed 280 pounds. He was a much larger man than I am. The situation was tense, uncertain and evolving rapidly. Mr. Goodridge committed the offense of Aggravated Assault against a Public Servant, was physically resisting arrest by attacking me, and for all these reasons I was in fear for my life. I reached behind to get my gun from my waistband. As a last resort, I fired two shots in self-defense, more specifically to stop him from seriously injuring or killing me with my own gun if he managed to access it. When I shot Mr. Goodridge, I reasonably believed that deadly force was immediately necessary to preserve my life. Mr. Goodridge had already struck me, he was continuing to attack me, and I believe he was trying to get control of my weapon. I was afraid that if he were able to get control of my weapon, he would shoot me, or perhaps shoot any responding or backup deputies.

(*Id.* at ¶¶ 11–12).

Clark's evidence disputes Ruiz's version of events. Clark asserts that Goodridge "was not causing a disturbance of any nature," "was peaceful and quiet," "was not causing or threatening harm to anyone or anything," "was unarmed and possessed no weapons of any kind," and "was not, at any relevant time, a threat to defendant's safety or the safety of any other individual." (Docket Entry No. 1, at ¶¶ 32–33). Clark asserts that when Ruiz ordered Goodridge to leave, Goodridge complied and began a peaceful exit. Clark asserts that Ruiz followed Goodridge, called for backup,

4

and shot Goodridge twice while trying to arrest him for trespassing. (*Id.* at ¶¶ 39–46). Clark argues that the record evidence creates a disputed fact issue material to determining whether Ruiz was reasonably in fear that his life was in danger when he shot and killed Goodridge. (Docket Entry No. 25).

## II.     The Legal Standards

### A.     Summary Judgment

"Summary judgment is required when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Trent v. Wade*, 776 F.3d 368, 376 (5th Cir. 2015) (quoting FED. R. CIV. P. 56(a)). "A genuine dispute of material fact exists when the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nola Spice Designs, LLC v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). "The moving party 'bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact.'" *Id.* (quoting *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"Where the non-movant bears the burden of proof at trial, the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Id.* (quotation marks omitted); *see also Celotex*, 477 U.S. at 325. Although the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536,

5

540 (5th Cir. 2005). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

"Once the moving party [meets its initial burden], the non-moving party must 'go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.'" *Nola Spice*, 783 F.3d at 536 (quoting *LHC Grp.*, 773 F.3d at 694). The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008); *see also Nola Spice*, 783 F.3d at 536.

### B.     Qualified Immunity

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity "is an affirmative defense; once properly raised by the defendant, the plaintiff has the

6

burden to negate the assertion of qualified immunity." *King v. Handorf*, 821 F.3d 650, 653 (5th Cir. 2016) (quotation marks omitted).

When a defendant invokes qualified immunity, the plaintiff must demonstrate that the defense does not apply. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002). A court must first find "that the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012). "[C]onclusory allegations and unsubstantiated assertions" cannot overcome the defense. *Miller v. Graham*, 447 F. App'x 549, 551 (5th Cir. 2011).

"A plaintiff can overcome a qualified immunity defense by showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Allen v. Cisneros*, 815 F.3d 239, 244 (5th Cir. 2016) (per curiam). "When considering a defendant's entitlement to qualified immunity, [a court] must ask whether the law so clearly and unambiguously prohibited his conduct that 'every reasonable official would understand that what he is doing violates [the law].'" *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc) (quoting *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083, 2084 (2011)). "If officers of reasonable competence could disagree as to whether the plaintiff's rights were violated, the officer's qualified immunity remains intact." *Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005). "To answer that question in the affirmative, [the court] must be able to point to controlling authority—or a 'robust consensus of persuasive authority'—that defines the contours of the right in question with a high degree of particularity." *Id.* at 371–72 (quoting *al-Kidd*, 131 S. Ct. at 2084). A case "'directly on point'" is not required, "'but existing precedent must have placed the statutory

7

or constitutional question beyond debate.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam) (quoting *al-Kidd*, 131 S. Ct. at 2083).

A court has discretion to decide which of these two prongs to consider first. *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). "But under either prong, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment. This is not a rule specific to qualified immunity; it is simply an application of the more general rule that a judges function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Tolan*, 134 S. Ct. at 1866 (citations omitted) (quotation marks omitted).

"Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231. It "gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 132 S. Ct. 1235, 1244 (2012) (quotation marks omitted); *see also Mullenix*, 136 S. Ct. at 308.

### III. Analysis

Clark argues that the record evidence creates factual disputes as to what occurred, and that these disputes must be resolved to determine whether Ruiz's use of force was reasonable. This precludes summary judgment for Ruiz on qualified immunity. Ruiz argues that he was trying to arrest Goodridge at the gym; Clark argues that record evidence shows that Goodridge left the gym without incident. Ruiz argues that he was injured and lost consciousness in a scuffle that Goodridge

8

started; Clark cites testimony that Ruiz was not injured and a hospital report showing that Ruiz never lost consciousness. Ruiz argues that Goodridge punched and fell onto him; Clark cites Ruiz's earlier statement that he was standing over Goodridge when he shot him. Finally, Clark argues that the testimony of Hall, the only witness, and Ruiz's own earlier statements, contradict Ruiz's account.

Clark's primary argument is that if the events happened as Ruiz alleges, Hall should have heard noises indicating a struggle. Instead, Hall heard only two gunshots. (Docket Entry No. 25, at p. 22). Hall was at the pool area and saw Ruiz talking to Goodridge in the weight room. (Docket Entry No. 25, Ex. 1 at pp. 34–35). According to Hall, Ruiz and Goodridge were not physically struggling in the weight room, Goodridge left peacefully, and Ruiz did not try to prevent Goodridge from leaving. (*Id.* at p. 39). After Ruiz and Goodridge left to go to the parking lot, Hall "was pacing them equally" on a parallel path. (*Id.* at pp. 47, 51). Hall followed Ruiz and Goodridge, but lost sight of them. He eventually caught up, but his vision was obstructed by a sport-utility vehicle with tinted windows. (*Id.* at pp. 51–52). Hall could see the tops of their heads on the other side of the vehicle. (*Id.* at pp. 52–53). Before hearing shots, Hall heard no shouting or yelling or any communications. (*Id.*). He confirmed that it was a quiet night, he could hear Ruiz and Goodridge running, and that he would have been able to hear shouting or yelling if there was any. (*Id.*). Hall neither saw nor heard a physical altercation between Ruiz and Goodridge. (*Id.* at p. 56). When asked whether he saw Goodridge turn to face Ruiz, Hall stated:

> No, sir. And it bewildered me for the longest time because I thought Mr. Ruiz had shot this guy in the back while they were running. But, apparently, now that I have another piece of the puzzle, I guess for that split second when they disappeared behind that SUV, he had to have spun around. I mean, it's the only way. Because I saw them. They were trucking it. They were running, disappeared for a second behind the vehicle. For just that split second you hear the reports. Then you see. I never saw him spin around. I – I – I, honestly, for the longest time, I though he, at first, shot him in the back while he was running. Because then –

9

> . . .
>
> I mean that's just what I thought. I didn't – and when they told me that he was shot from the front, I couldn't – I don't know. It was trouble – I had trouble putting it together because it's like, first there is two people running. How does he spin around that fast?

(*Id.* at pp. 56–57).

On cross-examination, Hall stated that "[w]hen they disappeared behind the SUV, they were both running, and, I mean, in the time it took me to walk the length of the vehicle, Mr. Goodridge was down." (*Id.* at p. 97). Hall did not see Ruiz "try to overtake" or "get physical" with Goodridge or see Ruiz pull his weapon. (*Id.* at p. 116).

The record evidence shows that Hall did not see the shooting or the events leading up to the shots. Even though Hall was an "earwitness" rather than an eyewitness to the shooting, he was close enough to the shooting, on the other side of a parking lot, (*see* Docket Entry No. 25, Ex. 3), that he should have been able to hear a struggle if there was one. As Hall described the events, he saw Ruiz running after Goodridge, lost sight of them behind a vehicle, and in that "split second," Ruiz shot Goodridge twice. Under Ruiz's account, he pursued Goodridge; Goodridge suddenly turned around and punched him in the left eye; they fell onto the ground and wrestled; and, after struggling to get Goodridge off him, as a last resort, Ruiz shot Goodridge twice. Ruiz alleges that there was a struggle. Clark points to record evidence that there was not.

Drawing reasonable inferences in favor of Clark, the nonmovant, Hall's deposition testimony creates factual disputes material to determining whether Ruiz's use of force was objectively reasonable. Summary judgment on qualified immunity is not appropriate because resolving the issue requires credibility determinations and decisions about what happened before the shooting. Ruiz's

motion for summary judgment, (Docket Entry No. 22), is denied.

SIGNED on November 21, 2017, at Houston, Texas.

                                                      Lee H. Rosenthal  
                                        Chief United States District Judge